Your Honor, the first case on the topic is issued at 17-0149, People of the State of Illinois, Plaintiff Appellee v. Lane and Ray Cavitt Jr., Defendant Appellant. Argument on behalf of the Defendant Appellant, Mr. Christopher M. Kopacz. Argument on behalf of the Plaintiff Appellee, Ms. Stephanie H. Newman. Mr. Kopacz, is that a silent C? That's a silent C, Mr. Kopacz. I said a silent C. Isn't it the K-O-P-A-C-Z? Yes. Kopacz. Kopacz. Okay. Thank you. You may proceed. Good morning, Your Honor. May it please the Court and the Counsel. Again, my name is Christopher Kopacz. I'm the attorney for Newman and Cavitt in this case. And I'd like to focus my time on Argument 1 in the briefs regarding the jury's review of the surveillance video exhibit. And then if time permits, I'll touch on Argument 2 about the proof of the police uniforms. In this case, a key piece of evidence was the surveillance video of the McDonald's parking lot where a number of the important events took place and where many of the charges were alleged to have taken place. Both parties in this case presented versions of the video to the jury, made arguments based on the video to the jury, and relied heavily on that video. Notably, the quality of the video was not very great. That's one of the worst videos I've ever seen. So why is it relevant at all? It makes it more relevant because it requires close scrutiny. It's not a video where one can easily look at what's being shown and come to a conclusion, which is why both parties here relied on the video. The video touched on the attempt murder count. And I think it's so important to note about the importance of the video is that the judge himself, after viewing the video at the end of trial, after restricting the jury's view of the video during deliberations, the judge says, you know what, I went back, I viewed this video a number of times to look at it, to get a good look, and therefore I'm going to vacate the conviction on the most serious count. So the judge certainly found it appropriate and found it clear enough to reverse what the jury had done on the lead count. Setting aside what the trial judge said in this case, the argument also is that just viewing the video in open court is structural error by itself. If the trial judge had followed all the, you know, outline of all these cases, how you're supposed to do it, and Lewis and Rouse and all those, that's structural error. Yes. I mean, and you're relying on Hollahan for that proposition. Other than Hollahan, the Henderson found error, I understand that, but the state's attorney was present in the courtroom, and the parties were not present in Henderson. I mean, Henderson's a totally different fashion situation. Right. Isn't Hollahan, based on all the case law, an outlier? I don't think so. I mean, this issue's been percolating for quite a few years. Yeah, but as it percolates, I mean, Hollahan's the only one that has found that this is error. You know, if you look at all the cases that you've cited in here, including Lewis, which cites the Davidson out of Tennessee Supreme Court, Hughes out of the West Virginia Supreme Court were surveying numerous cases. They found all of which found no abuse of discretion. That's in Davidson. In Hughes, it's universally accepted the trial court has the discretion to do this. So we do have Hollahan, which clearly supports our argument. We also have McKinley, which ultimately the defendant there wasn't granted relief, but two justices of the three agreed that this procedure requiring the jury to view an open court was error. One justice in McKinley said there was no prejudice. Another justice said there was no plain error. But two justices agreed that it was error. And other courts have agreed that clearly the better practice here is just to give the jury the video to view it as it sees fit. There's a big difference between best practice and structural error. There's a chasm in between. Indeed. But we do have case law, most recently Hollahan, well-reasoned, showing why this is an error, and so severe that it amounts to second-pronged plain error or structural error, as Hollahan says. We treat jury deliberations as sort of sacrosanct. Once the jury has started to deliberate, we do all that we can to prevent any interference in their deliberations. And as Hollahan said, requiring the jury to come in in the middle of their deliberations to view a video in the presence of the parties who are interested in the outcome, the authoritative figure of the judge, and then requiring them to sit in silence while they watch the video, that couldn't have possibly any more of a chilling effect on their deliberations. And for that reason, it's improper. Here we had a video that was, as I said, clearly important to this case. And the jury was brought in after they had asked to review the video and forced for 16 minutes in the middle of their deliberations to watch this video in silence. It inhibited their deliberations. As Hollahan says, this sort of thing is intrusive. It restrains their freedom of expression, their freedom of actions. And for that reason, it amounts to a clear error. If it's structural error, is it structural error because the defendant didn't perfect an objection to the situation? That's what makes it second-pronged plain error. If it's structural error, does that then mean that the defendant intentionally planned the error and one is not supposed to, under rules of general fairness and justice and equity, truth, justice in the American way, be allowed to essentially invite error and then claim that he's been prejudiced? Well, certainly in this case, Mr. Cavett didn't invite the error. He was very consistent. Before the deliberations began, he asked that the video go back to the jury, and the judge says no. The judge said that that would be improper to do that. The jury could view it a thousand times. It would be unfair to allow them to overemphasize the evidence. And then in his post-trial motion, he again reiterated that he wanted this video to go back to the jury's deliberations. So to the extent that some cases might invite error, if that's what happened in Lewis, that is certainly not present in this case. Is there any relevance or materiality to the fact that there was a longer version versus an edited version? I don't see the relevance. The jury saw it during deliberations, the 16-minute version, and then Cavett himself had shorter clips that he presented as evidence in his case. And then, of course, there was the 16-minute long video that was admittedly never published, as far as I can tell. But the 16-minute video, which showed the entire duration of events from the time the car comes into the parking lot to the time the car leaves the parking lot, that video was shown to the jury, and it was during deliberations. And it was during that time that their deliberations were intruded upon by having to watch this in open court. Is it normal to show a video by any party during opening statements? I don't know that it's common. I don't think it's improper to show it in opening statements. It was shown by the state in this case in opening statements, yes, showing the relevance of the video to its case. Now, to the extent that you're saying that it's the same sort of thing. Well, my understanding of the classic opening statement is, tell them what you expect to present during the trial, not present it during your statement about what you expect to present for the trial. Right. I agree. I think that is the classic way of looking at opening statements. Was there an objection to it? No. There was no objection to it. Again, I think because Union Cabot wanted the jury to see this video so that he could make arguments based on this video. This video is so important. I think the judge has discretion to allow parties to present exhibits to the jury during opening statements. So that seems to be what happened in this case. And going back to Hollihan, what I think is even more egregious than in Hollihan is that the judge at the outset in this case limited the jury to a single viewing. The jury was told that it could view the video only one time. And even more egregious is that the judge expressly admonished the jury that it would be improper to view it multiple times because it would amount to overemphasizing this piece of evidence over other evidence in the case. And it's sort of black-letter law that it's the jury's role as the fact-finder to decide what weight to be given to the evidence. The judge admits the evidence. Having decided that it was admissible, it then falls to the jury to decide whether it should emphasize this video over other evidence. And the judge's admonishment, in addition to the procedure of having them view it in the courtroom silently one time, this admonishment was further inappropriate and, quite frankly, prejudicial. Where the judge himself went back and watched the video and used this video to vacate the jury's verdict. Well, I don't think I've heard you say he watched it more than once. The judge said he watched it several times at the post-trial motion. He says he went and watched it several times, and I think he said, I wanted to get a very good look at it. And he said that he didn't see... You said that in your brief, but I don't know that you said, did you say it during or after? Oh, I may not have. I'm sorry. But he certainly did see it several times after the trial ended, according to his findings at the post-trial motion. If viewing the video by itself, without the judge's comments, is not second-pronged plenary, add the judge's comments on to viewing the video, does that now rise to second-pronged plenary? So, yes, that would make this even more of a second-pronged plenary. No, not even more. I'm saying if one is not second-pronged, for sure not second-pronged, let's say we follow Lewis on that aspect, but then we just look at these comments in conjunction with the video, does that rise to second-pronged plenary? Yes, it does rise to second-pronged. It's something that undermines the fairness of the trial, challenges the integrity of the judicial process, and the judge intrudes upon the jury's role to decide what weight to be given to the evidence in the case. It's what the judge's instructions plainly did here. And we would also argue, alternatively, that it's not second-pronged plenary. It could be reviewed under first-pronged plenary, where the evidence was closely balanced. The judge reversed upon the most serious count, which indicates the closeness of the case. Cavett testified in his own defense to something that was plausible, not at all fanciful. So in that sense, the evidence was closely balanced. The judge looked at the video and reversed on the attempted murder of the police officers. So as it relates to that, I mean, that ties into perhaps the aggravated battery of the police officers. The drug delivery is a little bit separate. I mean, there's different evidence on the drug delivery. You would agree with that, correct? It is different evidence. It is related to the video. The videotape shows the car coming into the lot. The state argues that you can see Cavett coming out of the car, getting the plastic bag from the trunk. You can see the undercover officers and the co-defendant, Dunn, coming and going out of McDonald's parking lot. And it pertains to Cavett's core argument, which is that he didn't realize that he was there for his co-defendant to conduct a drug deal. So the video is probably relevant to that. Would you agree that the video does show him getting the bag out of the trunk? It appears to show that, yes. Again, the quality of the video, as we all agree. That corroborates the officer's testimony as it relates to that fairly significant point. It appears to, yes. Cavett says he didn't realize what was in the bag in his testimony. But again, this is a video that was of poor quality. And everyone admitted at trial it was choppy. You have snow or ice covering part of the lens. So this is a video that required close scrutiny to look at not only whether it pertains to the drug offense, but whether it pertains to the attempt to murder, to the aggravated battery, the officers who were swarming in on the scene all at one time, the aggravated fleeing and leaving, his departure from the scene. All of this is depicted on the video. And once the officers surround the car, everything is sort of happening rather quickly. So this is a video that the jury was entitled to review closely. And as the judge reviewed it closely and vacated on the lead count, it shows. Do you think that wearing armored vests that say police on them is not in uniform? So as to the second issue, that's precisely our argument, that the statute specifically expressly requires a police uniform. And the evidence here did not show that the officers were in what could be described as a uniform. They're wearing various accessories, a tactical vest or a badge, that indicate they are police officers. But that's not sort of the distinctive everyday attire that one would associate with a police uniform. I think the word uniform is supposed to mean that everybody is dressed uniformly, not necessarily that they're wearing some sort of elaborate gold braid and chevrons and so on. Uniformly a police uniform. The statute requires them to be dressed in a police uniform. In a drug bus, this might be considered the typical, most uniform mode of dress or attire. It might be. But first, there was no evidence that this was sort of the uniform or typical attire for a drug bus. So we didn't have a fashion editor or an expert on fashion? No, you just need evidence as to what a uniform is in this context. And it's telling that you have officers there in plain clothes, because this is an undercover operation, mixed with other officers who are wearing tactical vests or shirts that say police on them. The legislative intent seems to be, by requiring the officer to be in a police uniform and giving this command, that he be clearly marked as a police officer. It seems to me, in the back recesses of my mind, about 20 years ago, I made a determination. I might have been on the bench. I could have been here. That a police officer in plain clothes who had a badge on his belt was deemed a police officer for purposes of escape and obeying a police officer and so on. Yes, exactly. And that's a different statute. That has a different element about whether the person knows that you're a police officer. And so the statute's written that way to prevent someone from escaping or aggravated battery or attempted murder of a police officer from doing those things to someone known to be a police officer. Okay. So what you're telling me is that there are different statutes, and they have different criteria to describe what is necessary to determine whether or not you have the necessary notice. Well, they're not even notice, but they are, in fact, the state has to prove beyond a reasonable doubt that they're wearing police uniforms. The case law we've cited, Williams and Maxey, say that that's an element that must be proven beyond a reasonable doubt, regardless of the defendant's notice or knowledge. I think I heard that. Thank you. You'll have an opportunity to make a rebuttal, sir. Thank you. Ms. Lee? Good morning, Your Honor. Good morning. You may proceed. Thank you. May it please the Court, counsel. There's one very important addition that I would like to make sure the Court observes, that the defendant actually did affirmatively indicate that he had no objection to the procedure regarding the video. And I would refer you to page 1733 and 1739 of the record. The Court specifically asked the defendant, who was acting in his pro case capacity at that time, do you have any objection to that procedure? And the defendant said, no, sir, Your Honor. Wasn't that after the Court had twice denied his request to send the video back? Actually, at the very beginning, that was page 1733, the judge said that he wasn't planning to send the video back if it got asked for, and the defendant at that time said, okay. And then we got again to where the jury did. My point is that the judge had already denied and said, I'm not going to let it go back. So what alternative did the defendant have? His pro se, what's he supposed to say? Well, any pro se, he's representing himself. He's chosen to. He needs to object if he does object. He actually specifically said, no, I do not object. Already. And so I do think that's an affirmative agreement to that. And, in fact, I mean, there were times where he said what he wanted. He asked for things. He objected to things. He said, I do not have. He said, no, sir, Your Honor, no objection to that procedure. Was it impossible or impractical to take the apparatus that displayed the video and take that back to the jury room? The judge did say that there would be difficulty getting equipment back there, but that it was beyond just the idea of the impracticality of the equipment itself. There are plenty of reasons why we give the judge's discretion whether or not to send something back. And, in fact, the case was justified. But how do we justify the proper exercise of discretion when the judge denies the jury the right to see this video and he himself views it over and over and over in ultimately ruling on or deciding to vacate the attempt murder? I mean, how do we justify that as appropriate exercise of discretion? In this case, I don't think we're in a discretionary mode of review because, in fact, there was not only no objection, but there was affirmative action. That's your position. Yes. Answer the question. So if you get to the prejudice that the defendant would have to prove prejudice for the claim in error or structural error, the judge, well, arguably the judge should not have watched the entire one-hour video either. I don't know that we would send something that wasn't published back. As to the 16-minute video, you know, there's plenty of reasons why, in any instance, we might not send back evidence just because the jury wants to see it. Example, if they wanted to see the fact. You're missing the point. The jury has to see it. He says one time, that's it. He, on the other hand, in making the same evidentiary factual decisions, views it multiple times. Right. That's the dilemma. And how do we justify that? Well, I also think that whether the judge should have done that or not is a different question. But there's a very difference between the weight you give to something and the number of times you view it. And what happened was the judge viewed it a bunch of times and said, I don't see intent to kill of the officer who was standing directly in front of the car. What you do see, if you watch it over and over and over again, is the defendant retrieving the bag of money from the trunk. You see the co-defendant coming back after having met with the officer. You see the defendant backing up into a van, which clearly has officers in it. So, obviously, the thousand times watching it is going to affect – because the state – it would support the state's case. And the defendant here is supposed to be showing prejudice. Apparently not, because the judge then vacated the attack murder. But none of the other charges. There's nothing in the – I mean, I don't see how you would vacate any of the other charges when you see the defendant retrieve the bag. You see the defendant appear just as they said he would at the very time. What about the ag bat? I'm sorry, what? What about the ag bat? The tape doesn't show the Cadillac striking the officer. The tape shows it backing up. Everybody – even the defendant acknowledged it hit the van. He just said it only hit once. And you see – you also have the pictures that show the damage to the van. And it's an entirely different mind – state of mind for an aggravated battery versus an intent to kill. But there has to be contact with the aggravated van. The officer was struck, correct? The officer was struck. One of them in particular was struck. The other one was struck while he was in the van. But, yes, the officer was struck. You do see the van. I mean, to me it does in fact look like it makes contact, but you also see all the pictures and you have the testimony. It really is only one piece of evidence. And it matches the officer's testimony and even the defendant's that, yes, he did in fact hit the van. And even if you listen to the judge's comments about what watching the video so many times was, I didn't think you intended to kill that person in front of you, but your intent was, let's get out of here, let's flee. So it's actually going to assist with some of the other charges. It will show consciousness of guilt. It will show all kinds of other things as well. One of the things that I think is more fundamental than arguing about the inconsistency or the paradox, the contradiction, that the jury is only allowed to view it once but the judge watched it multiple times. And that is, is there any case, authority, or statute that limits the amount of time or times that jurors, during deliberation, are limited in what it is that they review? Because if there is no case law on point that suggests that a trial court has the discretion to determine how much or how long or how many times a jury can consider a particular piece of evidence, it would seem to me he doesn't have the authority to exercise discretion in this area. I would disagree with that from the standpoint that all of the case law, especially up to, aside from Allahan, all of the case law has said that the judge has discretion regarding the mode and manner of the way that the evidence is viewed. Once you make a bright line rule that if the judge says that the jury can view it, now they get to have complete unfettered access, that has never been the law. And it's problematic because they could, what if they wanted to see biohazard material or they want to see the drugs because they want to see the markings on it or they want to see what the money looked like in this probably very flimsy jewel bag that was what the defendant took out of the trunk and you see him doing in the video. So unfettered access to every piece of evidence just because the judge wants to let them see it doesn't always make sense. The other thing is by bringing them into the jury room with all the parties present and making the record, that's how you know that there was no undue influence because the record was made of exactly what was and wasn't said. Well, the argument is the undue influence is the trunk. It's comments to the jury. You're only going to see this one time, and the reason I'm only going to allow you to see it one time is because I don't want you to overemphasize this piece of evidence. Right. And when a judge tells a jury, I don't want you to overemphasize this one piece of evidence, isn't the judge then instructing the jury on how to view that evidence? I disagree. If you look at the comments in context, it was almost three pages of transcripts was the entire comments because the judge also said you have to look at it yourself and draw whatever determinations or whatever information you can. So he was telling them to look at it. He was telling them they could take notes. He did say, which was possibly inartful, to say I don't want to overemphasize one piece of evidence. It's not fair to the parties. And I think in that sense what you have to look at is telling the jury that a piece of evidence isn't going to be viewed multiple times where it can imprint or over. Like let's say it was in a 911 call, and it's a hysterical victim. Do they hear it over and over and over again just because they want to hear that tone of voice or they want to hear the words that were said? But it's different weight, the weight that you give. You might have a very short witness on the stand who makes a very powerful impact on the jury, and they give it a ton of weight. They've only heard it once. They've only seen it once. And, in fact, if it was a witness testifying, maybe one of the jurors would write in their notes, huh, every time that witness talked about this specific subject has left eye twitched. Well, they're going to have to take that other juror's word for it. They don't get to go back and review the witness testifying. It either was or it wasn't. That might not be their recollection. So any other piece of evidence you don't always get to see multiple times, or if they go to, say, a crime scene, they don't get to go back 15 times just because the judge did, in fact, let them see it. You said that taken in context, and then you presented a differing view, which a reasonable person could interpret to mean that, at best, the jury was confused by the cross purposes or the inconsistent statements or the ironic perspectives of telling them that he doesn't want to overemphasize the evidence while underemphasizing the evidence. I don't know how fewer times, other than one, you can show something to someone or allow someone to view something. If you do it less than once, then you haven't shown it to them at all. And so it would seem to me if he only allows them to view it once, he's underemphasized the significance or even the ability of the jury to view and comment. And unfortunately, I've watched an awful lot of YouTube, and I end up having to rewind and look at things two or three times. It has nothing to do with criminal law. It just has to do with the fact that if you're working with a medium that is recorded, very often you'll miss or you think you missed and you want to go back and review it. So general experience or common everyday experience in life says that if you're going to watch something that you're supposed to watch and interpret and extrapolate, it would seem to me that you should be allowed to do so, and they weren't. Well, then essentially, if you take that to its logical conclusion, what you're saying is that every trial should be recorded and videotaped and they can rewatch every single witness and they can see how they testified on the stand because one person might have one memory and one person might have another. They need to extrapolate from that. It's interesting you said that because it's been suggested that since that has occurred and that there is at least audio recordings, even though we may or may not be watching body language, it's been suggested that the appellate court retry the case. This argument has been made. It's been bantered about. And I don't want to retry cases. I want to follow what's going on right now. It's hard enough to determine whether or not there's prejudicial error, but we may come to a point where there's a trial just like at one time. There were justices of the peace. They heard the case. If somebody appealed from that, it was a whole new trial in front of a magistrate or an associate judge. I'm not actually talking about for the purposes of appeal, but what you're suggesting is that when the jury wants to see anything at all, they have complete right to review it as many times as they would want. Why wouldn't they? Is there any case? We're going back to what I said before. Is there any case law that says that they can't? There's case law that says that the trial judge has discretion to determine the mode and manner in which they view the evidence. That's the inherent ability to control their own courtroom. That's the court's discretion. That's what we do give them. Otherwise, if the jury in the middle passes a note that they want some piece of evidence added in, they don't get to control that. Do you have a case citation on point relative to mode and manner, as opposed to the idea that the trial court has the discretion to send or not to send evidence back? Actually, in the Hallahan case itself, they do cite a case. I also think it was the Lewis case, if I recall correctly. But in the Hallahan case, it says in paragraph 38, it says, the mode and manner in which the trial court allows the jury to review a piece of evidence during jury deliberation falls within the scope of the court's inherent authority to manage its courtroom and is a matter of the court's discretion. Now, we have the added part in Hallahan and in the case before Your Honors, we're actually looking at plain error. So it shouldn't even be a matter of abuse of discretion. It should be proving that the defendant was in fact prejudiced, if it was error at all, which obviously I disagree that it was error. But even if you found that it was error, you would have to find prejudicial error. Your time is up. Would you like me to close? Well, I was asking if you wanted to hear anything on the uniform issue. But otherwise, I've said what I wanted to say. Thank you. Thank you. Thank you, Your Honors. Mr. Kopecz, you may proceed. I do that so that there's a record of the fact that you now are commencing your rebuttal. Counsel, opposing counsel argues that your argument is that any time the jury asks for some piece of evidence, they should be allowed unfettered access. Is that what your argument is? No. I'm arguing that the jury should be treated without the issue should be reviewed without violating the privacy and the secrecy of jury deliberations. And I think what my counsel is arguing has to do with the mode and manner of viewing evidence. And she's right. We don't want to give juries biohazard material. But the jury can view some of these things without their deliberations being infringed upon. Well, many times this cuts against the defendant. So, you know, I've been involved in many trials where we have autopsy photographs, and the defense attorney would argue that those should not go back to the jury because they're unduly gory and prejudicial. And so maybe some of them are published to the jury during the trial, during the pathologist's testimony. Now, if a jury was to say, I'd like to see, you know, Exhibits 20 and 21, which are autopsy photographs, so your argument is then the court should really just send those back there and let them look at those gory photographs as often and as much as they want. Let it influence them in whatever way it influences them. To the extent that the court makes a decision whether to send those autopsy photos back or not, it has to do so without violating their deliberations. In other words, if he sends it back, you can't tell them. It can only look at it for three seconds. Exactly. Once the judge, you know, decides that the evidence is admissible and then decides to let the jury view it or not view it, that's it. We don't review or we don't look at how the jury is viewing the evidence. That's the role of the fact finder. And in this case, you had a large number of exhibits that were sent back to the jury for the jury to view as they saw fit. There were a number of photographs. The plastic bag itself, I think, was sent back to the jury. So the jury had unfettered access and could review all of those other exhibits. They could look at the plastic bag a thousand times if they wanted to. But the video, this key piece of evidence, again, relied upon by both sides. And I think everyone knows from watching YouTube and watching film and from court cases how important videos can be. The jury should have been allowed to view that evidence as it saw fit without the interference, without the presence of the parties and the judge. Didn't the court say in that colloquy when it said we're only going to watch it to give you emphasis on it, didn't the court also say it's up to you what weight to put on the evidence? To that effect, something to that effect. And then the judge turned around and said I'm only going to let you view this one time because there's no other evidence that you could view a thousand times. Clearly saying to the jury that it should not give more emphasis to this video, that it should give a narrow emphasis to the video. So to the extent that the court's saying that, he undercuts it by immediately saying this is why we're doing it this way. Yes, they did have unfettered access to everything else that was said. Yes. Would it matter if stills had been taken from this video and the photos sent back? It wouldn't carry this error at all because, again, the deliberation. No, in lieu of bringing them out at all. Oh, in lieu of. So, right. That would be possibly okay. The judge has discretion about what to send back and what not. And if the parties can agree or make their objections, that might be okay. Say if part of the video was gory or prejudicial in some sense, you might only want to send back stills. So the judge has ways of addressing this. And I don't think we touched on the practicality of this during the opening, but the record shows no indication that it would have been impractical just to give the jury the video. There was a projector in the courtroom, according to the record, and at the time of deliberations they wheeled the TV up to the jury box, and that's what they viewed the video on. So it's not clear that that TV couldn't have been sent back to the jury with instructions on how to play the video and allow the jury to view the video as it saw fit without invading on their deliberations. And one other point as a factual matter, I'm talking about what you can and can't see from the video. One point about the aggravated battery, Mr. Cabot successfully impeached, I think it was Officer Murphy on, who testified that clearly the van hit twice, the van was hit twice that he sort of heard engine rev and come back and hit the van a second time. Cabot tried to point out on the video that that's not something that you can tell from the video. So, again, this is something that the jury should be able to decide based on the who's telling the truth here. And so with that, I ask that you reverse and remand for a new trial on argument one, or at a minimum reverse the conviction for aggravated to, you know, leaving argument two. Any other questions? Thank you. We'll take the case under advisement. There'll be a short recess.